IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

JOHN MARON NASSIF,

DEFENDANT.

CASE NO. 1:21-CR-00421-JDB

REPLY TO GOVERNMENT'S RESPONSE TO
MOTION IN LIMINE TO PRECLUDE
USE OF PREJUDICIAL TERMINOLOGY

The Defendant, John Maron Nassif, through counsel, hereby replies to the government's response, Doc. 51, to Mr. Nassif's motion in limine requesting "an order that the government may not, and must instruct its witnesses not to, use inflammatory, value-laden, or legally conclusory words to describe" persons and events at the U.S. Capitol on January 6, 2021, Doc. 46. The government opposes the motion.

The government's response takes an overbroad view of zealous advocacy. For example, although this motion in limine concerns the language that may fairly be used in front of a jury during the guilt phase of trial, the government supports its argument by quoting extensively from *judges'* statements at *sentencing* hearings. Doc. 51, at 6-7.

In any event, Mr. Nassif's motion isn't concerned with the Court, but with the government and its witnesses. *See* Doc. 46. The government's response fails to

acknowledge the problems with using inflammatory language at trial, and it fails to appreciate that both the audience (i.e., whether the jury is present or not) and the stage in the proceedings bear heavily on whether such language may be allowed.

The undersigned concedes there is no absolute bar against inflammatory language. *United States v. Felton*, 417 F.3d 97, 103 (1st Cir. 2005) ("It is hard to lay down a general rule as to epithet and rhetoric because the considerations are matters of degree: these include accuracy in description, threat of unfair prejudice, frequency of use, and alternative means of description."). Instead, "these are matters for the trial judge's judgment." *Id.* No per se rule requires a mistrial if a prosecutor calls a defendant "a thug" or "an animal." *See Darden v. Wainwright*, 477 U.S. 168, 180–81 (1986); *Reese v. Sec'y, Fla. Dep't of Corr.*, 675 F.3d 1277, 1293 (11th Cir. 2012). But there are good reasons for the Court to limit or forbid such terms. *See Darden*, 477 U.S. at 180 (calling defendant "animal" was "offensive" and "undoubtedly . . . improper"). Ad hominem labels like "insurrectionist" and "rioter" carry implications that go beyond conduct, to character. Attacks on character distract the jury from genuine issues and should be excluded.[1]

---

[1] *United States v. Wright*, 489 F.2d 1181, 1186 (D.C. Cir. 1973) (prosecutor may not "comment on the character of the accused" where defendant has not "put[] his character at issue"); *United States v. Cannon*, 88 F.3d 1495, 1502 (8th Cir. 1996) ("Referring to defendants as 'bad people' simply does not further the aims of justice or aid in the search for truth, and is likely to inflame bias in the jury and to result in a verdict based on something other than the evidence."), *abrogated on other grounds by Watson v. United States*, 552 U.S. 74, 83 (2007); *United States v. Schuler*, 813 F.2d 978, 980–81 (9th Cir. 1987) (prosecutorial arguments with "apparent[] . . . purpose of showing that [the defendant] was of bad character" violated due-process

Moreover, as Mr. Nassif's motion in limine notes, "[w]ords like 'rioter' and 'insurrection' emphasize group culpability and distract from the proper question of individual culpability." Doc. 46, pg. 2. The elements of the charged offenses maintain a consistent focus on a defendant's personal actions, knowledge, and intentions. *See* 18 U.S.C. § 1752(a)(1), (2); 40 U.S.C. § 5104(e)(2)(D), (G). The government should not be allowed to point to others' conduct to persuade the jury that, for example, Mr. Nassif "engage[d] in disorderly or disruptive conduct," §§ 1752(a)(2); 5104(e)(2)(D). *See Krulewitch v. United States*, 336 U.S. 440, 454 (1949) (Jackson, J., concurring in the judgment and opinion of the Court) ("It is difficult for the individual to make his own case stand on its own merits in the minds of jurors who are ready to believe that birds of a feather are flocked together."). Evidence and arguments associating a defendant with another person who behaved criminally can "create a grave risk of spillover prejudice . . . [and] 'prevent[] the jury from making a reliable judgment about [the defendant's personal] guilt or innocence." *United States v. Martínez*, 994 F.3d 1, 15 (1st Cir. 2021) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)). If the government tries to do that, Mr. Nassif's counsel can at least attempt to mitigate the taint by showing that the evidence distinguishes his conduct from others'. But loaded terms operate more subliminally and are harder to confront. The government makes no secret of its intent to tar Mr. Nassif with the same brush as everyone around him. The Court

---

right to fair trial); *Washington v. Hofbauer*, 228 F.3d 689, 699–700 (6th Cir. 2000) (arguments attacking defendant's character constituted prosecutorial misconduct).

3

should not allow it. A conviction must be based on an "individualized determination[] of guilt based on the evidence presented at trial," *United States v. McGill*, 815 F.3d 846, 895 (D.C. Cir. 2016), and the government should not have a free hand to use terms that suggest collective culpability and invite the jury to judge the case accordingly.

Allowing government lawyers and witnesses to use loaded and inflammatory terms in front of the jury would risk obvious prejudice to Mr. Nassif's defense. The government has shown no need to use it, much less a need great enough to outweigh the prejudice. Jurors can identify a mob or a riot when they see one; if the characterization fits, they can draw that conclusion themselves instead of having the government feed it to them—particularly since the existence or nonexistence of a mob or a riot is not relevant to any of the charges.

The government advocates for the right to use such terms for improper purposes. Calling Mr. Nassif a rioter, and the events around him an insurrection, might help the government persuade jurors that he was disorderly and disruptive because he was around others who were, or that he intended to impede government business because others did. But those purposes are not rooted in the elements or the applicable principles of criminal liability. The government would not be unfairly prejudiced by a pretrial ruling that it should present its case in objective terms instead of inflammatory, subliminal terms. *See Felton*, 417 F.3d at 103 (listing "threat of unfair prejudice, frequency of use, and alternative means of description" among considerations in whether to allow "epithet and rhetoric").

## CONCLUSION

Mr. Nassif asks the Court to exercise its discretion to bar or limit the use of prejudicial language at trial and renews his request that the Court allow time during the pretrial conference for the parties and the Court to discuss the appropriate parameters.

Respectfully submitted,

A. Fitzgerald Hall
Federal Defender, MDFL

*/s/ James T. Skuthan*
James T. Skuthan
First Assistant Federal Defender
Florida Bar No. 0544124
201 South Orange Avenue, Suite 300 Orlando, FL 32801
Telephone: 407-648-6338
Fax: 407-648-6095
E-Mail: jim_skuthan@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2022, I electronically filed the foregoing via this Court's CM/ECF system, which will send notice of such filing to all counsel of record.

*/s/ James T. Skuthan*
James T. Skuthan, Esq.
Attorney for Defendant