IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 1:21-cr-00421-JDB |
| | : | |
| JOHN MARON NASSIF, | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' TRIAL BRIEF**

The United States, by and through its attorneys, respectfully submits this brief summarizing the government's evidence at trial and various legal issues likely to be brought before the Court.

**I.    THE JANUARY 6 CAPITOL RIOT AND THE DEFENDANT'S ACTIONS**

On January 6, 2021, thousands of people descended on the U.S. Capitol building and grounds when a joint session of Congress had convened to certify the votes of the Electoral College for the 2020 Presidential Election. Vice President Michael Pence, as the President of the Senate, was there to preside over the joint session and, later, the Senate proceedings. On that day, physical barriers surrounded the U.S. Capitol building and grounds. At all relevant times, the United States Capitol building and its grounds—including the eastern stairs leading to the Capitol Rotunda, the terrace outside the Rotunda doors, and the entire Capitol building itself—were closed to members of the public.

The defendant, John Maron Nassif, a 56-year-old, self-described entrepreneur and musician from Florida, was among the group of rioters who illegally entered the U.S. Capitol grounds, and then the Capitol building, that day. After learning that the Capitol had been breached, he traveled to the east side of the Capitol building where he and other rioters forced open the Rotunda doors and remained inside the building for approximately 10 minutes. While present in the Capitol, the defendant moved through the crowd, waved others into the building, and joined

1

other rioters who attempted to push past police officers who sought to clear them from the Rotunda. Through his conduct, the defendant violated 18 U.S.C §§ 1752(a)(1) and 1752(a)(2) and 40 U.S.C. §§ 5104(e)(2)(D) and 5014(e)(2)(G).

## II. THE GOVERNMENT'S PROOF

With this filing, the government aims to streamline the presentation of evidence in the trial and focus the legal issues before this Court. To prove the general events that took place during the riot, the government plans to present stipulated testimony and exhibits related to the U.S. Senate and the authenticity of video and other electronic evidence. The government will also present testimony of a United States Capitol Police (USCP) Captain and USCP Officer, a Metropolitan Police Department (MPD) officer, who was present in the Rotunda, and two Federal Bureau of Investigation (FBI) agents who investigated the case. This presentation will prove the charged offenses beyond a reasonable doubt.

The government requests approximately ten minutes for its opening statement and approximately 30 minutes, in total, for its closing argument and rebuttal.

### A. Stipulated Testimony

In the interest of streamlining the presentation of evidence about subjects that will likely be undisputed, the government proposes to offer into evidence transcripts of testimony from two prior January 6 trials through a stipulation that defense counsel is currently considering.

Earlier this year, two other matters have proceeded to trial that involve offenses committed on January 6, 2021: *United States v. Guy Reffitt*, 1:21-cr-00032-DLF (February 28 through March 8, 2022) and *United States v. Couy Griffin*, 1:21-cr-00092-TNM (March 21-22, 2022). Both featured testimony from a USCP Inspector; both featured testimony from a U.S. Secret Service representative. The *Reffitt* trial also featured testimony from the General Counsel to the Secretary of the U.S. Senate; in *Griffin*, the government presented a montage of video and documentary

evidence from Congress without accompanying witness testimony.

The testimony and evidence presented through these witnesses is relevant to prove several key elements of the offenses. Counts One and Two, which charge violations of 18 U.S.C. §§ 1752(a)(1) and 1752(a)(2), require proof that the defendant entered or remained within a restricted building or grounds. Grounds may be restricted, under this statute, if a USSS protectee is temporarily visiting. 18 U.S.C. § 1752(c)(1)(B). Here, that is the former Vice President, who was visiting the Capitol in his capacity as President of the Senate, for the proceedings relating to the certification of the Electoral College vote.

Counts Two and Three, which charge violations of 18 U.S.C. § 1752(a)(2) and 40 U.S.C. § 5104(e)(2)(D), require proof of an intent to impede or disrupt government business or official functions (Count Two) or a session of Congress, either house of Congress, or a hearing before a Congressional committee (Count Three). Count Two further requires proof that the disorderly or disruptive conduct occurred "when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions." 18 U.S.C. § 1752(a)(2). The testimony and evidence from the USCP and from the House and Senate will establish these points: Congressional proceedings were disrupted when the riot forced Congress to adjourn and members to evacuate and, even after that, the riot and the presence of rioters constituted an ongoing disruption in that Congress could not reconvene until the building and grounds were secured.[1]

At the same time, the government expects that the testimony from these witnesses will be non-controversial. The government does not expect any of these witnesses to identify the defendant or to describe the defendant's conduct. Both parties recognize that this Court has recently heard such evidence and found it to be credible. To save time, and to focus on the facts that will

---

[1] On this point, the government will offer USCP testimony to supplement the record developed in *Griffin*.

3

be in dispute, the government plans to offer into evidence transcripts of testimony from the *Reffitt* trial, the *Griffin* trial, or both, along with key pieces of evidence. The government has discussed this plan with defense counsel, and defense is currently reviewing this and other stipulations, and plans to respond at or before the time defendant's trial brief is due on November 29, 2022. The government will offer brief, supplemental testimony from a USCP witness to establish precisely how the USCP responded to the riot and how the presence of rioters in the Capitol building forced Congress to adjourn and to remain adjourned until the Capitol building and grounds were secured.

### B.  Testimony from FBI and MPD Witnesses

The government will present testimony from Gregory Tarbert and Milagro Walraven, the FBI case agents assigned to this matter. Agent Tarbert arrested the defendant at his home in Chuluota, Florida on May 10, 2021 and, pursuant to a search warrant, seized and searched the defendant's phone. Agents Tarbert and Walraven have also reviewed USCP closed circuit television (CCTV) footage, as well as open-source videos and Facebook posts made by the defendant that capture the defendant in the Capitol building. Given this foundation, Agents Tarbert and Walraven will describe the electronic and other evidence of the defendant's conduct on January 6, 2021.

Prior to January 6, 2021, the defendant traveled from the Orlando, Florida area to Washington, D.C. and checked into the Renaissance Hotel located at 999 9th Street, N.W., where, according to data on his phone, he stayed from January 5-7, 2021. Cell phone data also showed that the defendant drove from Florida in a van with two other people. On January 6, 2021, the defendant attended the former President's rally. Photographs and video footage from the defendant's cell phone and Facebook posts confirm his presence there. After the rally, the defendant walked back to his hotel with some friends. But unlike his friends, Mr. Nassif turned around and went back to the Capitol. He claimed in subsequent Facebook post that he went back "to see for himself what was going on." According to Google geofence data, at approximately 3:01 p.m., the defendant first

entered the restricted perimeter of the Capitol grounds on the northeast side of the complex.

At approximately 2:25 p.m., the East Front Door through which the defendant gained entry was breached by rioters. CCTV footage from the Capitol shows that, at approximately 3:09 p.m., officers managed to briefly close the doors, which showed broken glass in the doors' windows. At 3:10 p.m. the defendant can be seen in CCTV footage with a crowd at the top of the steps just outside the doors. Approximately one minute later, CCTV footage shows that a rioter pushed his/her way out of the door, at which point rioters began forcing their way in and out. By approximately 3:14 p.m., the defendant had pushed his way into the foyer area near the Rotunda along with officers in riot gear. The area then was flooded with people pushing officers and civilians in every direction, with the number of rioters far outnumbering the number of officers. The defendant proceeded to walk through the crowd toward a second door, the Rotunda Door, which led into the Rotunda. Inside the Rotunda, the police were trying to push rioters out, and a mob of rioters was physically resisting. At 3:18, the defendant entered the Rotunda and briefly joined others who were pushing and struggling with the police. In total, the defendant spent about ten minutes inside the Capitol building before exiting through the same door he had entered at approximately 3:23 p.m.

In addition to CCTV video, open-source video recorded by third-parties captured some parts of the defendant's trajectory through the Capitol. The defendant also recorded his own videos showing what was happening outside the East Front Door before he came in and others that he took inside that he then posted to his Facebook page, and which were obtained pursuant to a search warrant. The defendant's videos depict some of the same scenes that the open-source and CCTV video captured. In the videos, it is clear that before the defendant entered, the East Front doors were closed by the police and both windows were broken. During the videos, the defendant is seen and heard starting a chant of "Who's house? Our House?" Further, various rioters can be heard shouting at the police to let them in. Once inside, the defendant made several videos of himself and large

5

groups of people in the building. The videos reflect that the noise level inside was very loud, with people yelling and cursing, and the beeping of alarms can be heard in the background. The defendant left the Capitol building at about 3:23 p.m. but remained in and around the Capitol grounds for a time. Google geofence data shows that the defendant exited the restricted grounds on the southeast side of the Capitol at approximately 3:42 p.m. on January 6, 2021.

Several things about the defendant's entry are noteworthy. First, the windowpanes in the East Front doors had been smashed. This was captured on the defendant's video and would have been obvious to him as he entered. Second, alarms were sounding throughout the building; they were piercingly loud and easily audible above the crowd noise. This, too, was captured on the defendant's video. Third, police officers stood on either side of the doorway as the defendant entered. Fourth, many of law enforcement officers inside were in riot gear, donning helmets and using shields.

In addition to his actions captured on video, a review of the defendant's Facebook activity showed that late in the evening of January 6, 2021, the defendant posted on his Facebook page that he had initially gone to his hotel to walk others home, but then returned to the Capitol to see what was going on for himself. In the days following January 6th, the defendant corresponded with others and sought to justify his actions on Facebook.

The government will also present testimony from an officer with the MPD who was involved with clearing the Rotunda while the defendant was present therein. The government expects this witness to address the police efforts to clear the Rotunda; the size of the crowd; and the violence of the crowd directed at police. The government may present body-worn camera footage from this officer and/or nearby officers and concurrent USCP CCTV security camera footage which align with the defendant's own video.

### C. Elements of the Crimes Alleged

The Information charges two offenses under 18 U.S.C. § 1752 and two offenses under 40 U.S.C. § 5104. The elements of those offenses are as follows.

#### i. Entering or Remaining in a Restricted Building or Grounds

Count One of the Information charges the defendant with entering or remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1). In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant entered or remained in a restricted building or grounds without lawful authority to do so.
2. Second, that the defendant did so knowingly.

The term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting.

The term "person protected by the Secret Service" includes the Vice President and the immediate family of the Vice President.

A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. In deciding whether the defendant knowingly entered or remained in a restricted building or grounds, the Court may consider all of the evidence, including what the defendant did or said.[2]

#### ii. Disorderly or Disruptive Conduct in a Restricted Building or Grounds

Count Two of the Information charges the defendant with disorderly or disruptive conduct

---

[2] *See* Seventh Circuit Pattern Criminal Jury Instructions; *see also Arthur Andersen LLP v. United States*, 544 U.S. 696, 705 (2005).

in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2). In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.

2. Second, that the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

3. Third, that the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

"Disorderly conduct" occurs when a person is unreasonably loud and disruptive under the circumstances, or interferes with another person by jostling against or unnecessarily crowding that person.

"Disruptive conduct" is a disturbance that interrupts an event, activity, or the normal course of a process.[3]

The terms "restricted building or grounds" and "knowingly" have the same meanings described in the instructions for Count One.

### iii. Disorderly Conduct in a Capitol Building

Count Three of the Information charges the defendant with disorderly and disruptive conduct in a Capitol Building, which is a violation of federal law.

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

---

[3] Redbook 6.643.

1. First, that the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings.

2. Second, that the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress.

3. Third, that the defendant acted willfully and knowingly.

The term "United States Capitol Buildings" includes the United States Capitol located at First Street, Southeast, in Washington, D.C.[4]

The term "disorderly or disruptive conduct" has the same meaning described in the instructions for Count Two defining "disorderly conduct" and "disruptive conduct."

A person acts "willfully" if he acts with the intent to do something that the law forbids, that is, to disobey or disregard the law. "Willfully" does not, however, require proof that the defendant be aware of the specific law or rule that his conduct may be violating.[5]

The term "knowingly" has the same meaning described in the instructions for Count One.

### iv.   Parading, Demonstrating, or Picketing in a Capitol Building

Count Four of the Information charges the defendant with parading, demonstrating, or picketing in a Capitol Building, which is a violation of federal law.

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings.

2. Second, that the defendant acted willfully and knowingly.

The terms "parade" and "picket" have their ordinary meanings. The term "demonstrate"

---

[4] 40 U.S.C. § 5101

[5] *See United States v. Bryan*, 524 U.S. 184, 190 (1998).

refers to conduct that would disrupt the orderly business of Congress by, for example, impeding or obstructing passageways, hearings, or meetings, but does not include activities such as quiet praying.[6]

The terms "United States Capitol Buildings," "knowingly," and "willfully" have the same meanings described in the instructions for Counts One and Three.

### III. THE PARTIES' EVIDENCE AND ANTICIPATED DEFENSES

The parties are mutually committed to trying the case expeditiously and without lengthy arguments about objections. The government has met and conferred with defense counsel about the evidence it plans to present. Based on that meeting, the government expects that all, or nearly all, of its evidence will be admitted without objection. Likewise, based on defense counsel's representations about his plan for trial, the government expects that it would not object to most of the defendant's exhibits. The government may nonetheless object to particular portions of exhibits, or particular questions about exhibits.[7]

The government does not expect the defendant to raise factual or legal arguments about the fact that the defendant entered the building, the location or the movement of the Vice President, the timing of the Vice President's business, whether the existence of the Vice President's ceremonial office prevent him from visiting the Capitol temporarily, or any other such technical argument. Instead, the government anticipates that the defense will focus on the defendant's actions, what the defendant observed on January 6, 2021, and his *mens rea*.

---

[6] *Bynum v. United States Capitol Police Board*, 93 F. Supp. 2d 50, 58 (D.D.C. 2000).

[7] For example, the government will offer statements that the defendant made on his Facebook page. Because the defendant is an opposing party, his statements are not hearsay pursuant to Fed. R. Evid. 801(d)(2)(A). There is no similar rule allowing the defendant to admit his own statements. Barring an exemption from hearsay (e.g., Rule 801(d)), an exception to the hearsay rule (e.g., Rule 803), or statements made admissible by the Rule of Completeness (Rule 106), the defendant's own statements, when offered by him, are inadmissible hearsay.

IV. **CONCLUSION**

The defendant joined a mob that entered the U.S. Capitol building on January 6, 2021. He entered the restricted area on the plaza in front of the East side of the Capitol and proceeded up the stairs to the East Front Door. He led a chant outside of the East Front Door, as rioters demanded to be let inside the building. He eventually gained entry, despite the efforts of the police to keep him out, moving further into the restricted area. He unlawfully demonstrated and paraded through the Foyer to the Rotunda, where he joined other rioters who were physically struggling with the police. These actions were part of the defendant's efforts to disrupt government functions and the work of Congress, which he succeeded in doing, along with other rioters, both by impeding and disrupting law enforcement and by delaying Congress's certification of the Electoral College vote. At trial, the evidence will prove beyond a reasonable doubt that he committed each offense charged in the Information.

Respectfully Submitted,
MATTHEW M. GRAVES
United States Attorney

By: /s/ Elizabeth N. Eriksen
Elizabeth N. Eriksen
Trial Attorney, Detailee
Virginia Bar No. 72399
United States Department of Justice,
Criminal Division
Detailed to USAO-DC
(202) 616-4385
Elizabeth.Eriksen@usdoj.gov

/s/ Brian Morgan
Brian Morgan
Trial Attorney, Detailee
New York Bar No. 4276804
U.S. Department of Justice, Criminal Division
Detailed to USAO-DC
(202) 305-3717
Brian.Morgan@usdoj.gov